IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BONNIE THORNTON &** : | |
| : | |
| **GUILFORD THORNTON** : | |
| : | Case No. 2:15-CV-1337 |
| Plaintiffs, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge King |
| **CITY OF COLUMBUS,** *et al.* : | |
| : | |
| Defendants. : | |
| : | |

**OPINION & ORDER**

Before the Court is Defendant City of Columbus's ("Defendant" or "the City") June 11, 2015 Motion to Dismiss for Failure to State a Claim upon Which Relief May Be Granted brought pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 12.) The Motion has been fully briefed and is ripe for review. For the reasons below, it is **GRANTED**.

**I. BACKGROUND**

**A. Factual Background**

Plaintiffs Bonnie and Guilford Thornton ("Plaintiffs") brought this suit on April 17, 2015. (Compl., Doc. 2.) Their complaint alleges the following. On April 20, 2013, Guilford Thornton contacted the Columbus Division of Police to report two young men outside his residence, located at 1542 Oakwood Avenue in Columbus, Ohio. (*Id.* ¶17.) Mr. Thornton identified the two individuals as having committed an assault he witnessed several days earlier. (*Id.*) Later that evening, responding Columbus police were dispatched to Mr. Thornton's residence in response to a 911 call. (*Id.* ¶¶18, 20.) The caller reported that a man on the porch of 1542 Oakwood Avenue was threatening several people with a gun. (*Id.*) After the officers arrived on the scene, a

1

witness informed them that the offending man was now inside Mr. Thornton's residence. (*Id.*) Based solely on the foregoing, the responding officers entered the residence. (*Id.* ¶19.) Within moments, they spotted Mr. Thornton and immediately opened fire on him, striking him in the hand and buttocks. (*Id.*) The officers placed Mr. Thornton under arrest and transported him to Grant Hospital where he underwent surgery in connection with his injuries. (*Id.*) Mr. Thornton was then prescribed several pain medications. (*Id.* ¶20.) He was handcuffed to his bed throughout his hospital stay. (*Id.* ¶21.)

That evening, the responding officers conducted a "walk-through" of the scene with investigators. (*Id.* ¶22.) The officers gave limited explanation as to where items and individuals had been physically located, and they declined to provide a statement concerning specifics of their conduct. (*Id.*) Also, despite being in physical control of the residence, and despite the fact that Mr. Thornton had been seriously wounded in the incident, the officers conducted no forensic investigation of the scene. (*Id.* ¶23.) Further, investigators did not speak to any of the several eye-witnesses to the confrontation until several days later. (*Id.* ¶ 24.) Following the "walk-through," the responding officers were sequestered from the investigation. (*Id.* ¶ 26.) Those officers later retained counsel in connection with the shooting. (*Id.* ¶ 26.)

On April 22, 2013, Ms. Thornton hired counsel in connection with her husband's arrest. (*Id.* ¶27.) Counsel immediately went to visit Mr. Thornton at Grant Hospital but was denied access. (*Id.*) Counsel was eventually allowed to speak with Mr. Thornton, but only after contacting various employees of the Columbus Division of Police, including Detective Patricia Clark. (*Id.* at 2, ¶28.) Later that day, Detective Clark conducted a recorded interview of Mr. Thornton in the absence of counsel. (*Id.* ¶29.) During the conversation she informed Mr. Thornton that he was under arrest and that she was aware he had retained counsel. (*Id.*)

On April 25, 2015, Mr. Thornton was released from Grant Hospital. (*Id.* ¶ 30.) Still in custody, he was transported to Columbus Police Headquarters where he was placed in an interview room equipped with audio-visual recording equipment. (*Id.*) Detective Clark interrogated Mr. Thornton while he was clothed in only a hospital gown and had an IV inserted into his immobilized arm. (*Id.* ¶31.) When Mr. Thornton requested an attorney, Detective Clark threatened him with legal action and incarceration. (*Id.*)

Mr. Thornton agreed to answer Detective Clark's questions due to fear that he would be incarcerated in his then-present state. He was then charged with six counts of aggravated menacing and sent to the Franklin County Jail. (*Id.* ¶32.) Deputies at the Franklin County Jail refused to accept Mr. Thornton due to his ill health, and he was eventually returned to the hospital. (*Id.* ¶33.) Neither Detective Clark nor any other agent of the Columbus Division of Police contacted Mr. Thornton's counsel regarding either interrogation. (*Id.* ¶34.)

Approximately ten days after the shooting, the responding officers submitted substantially identical written statements through their attorneys. (*Id.* ¶35.) The statements provided demonstrably false information concerning their contact with Mr. Thornton and the circumstances of the shooting. (*Id.* ¶36.) The City of Columbus refused to dismiss the criminal charges against Mr. Thornton and a jury trial commenced on the matters on April 2, 2014. (*Id.* ¶38.) During that trial, the reporting officers provided false testimony. (*Id.* ¶39.) At least one other witness also provided false testimony during the trial. (*Id.* ¶40.)

Mr. Thornton was acquitted of one of the charged offenses. (*Id.* ¶42.) The jury hung 7-1 in favor of acquittal as to the remainder. (*Id.*) The City of Columbus dismissed the remaining charges on May 19, 2014. (*Id.*)

### B. Procedural History

On April 17, 2015 Plaintiffs brought suit against the City of Columbus, the Columbus Division of Police and its Police Chief Kim Jacobs, Officers Danny Dupler and Jeffrey Kasza, Jr., Detective Patricia Clark, and other unknown individuals. (Doc. 2.) The Complaint alleged numerous violations of 42 U.S.C. § 1983 on the part of Defendants. (*Id.* at 9-16.) In relevant part, the Complaint alleged violations of Bonnie and Guilford Thornton's Fourth Amendment rights and Guilford Thornton's Fifth, Sixth, and Fourteenth Amendment rights.

On May 13, 2015, then-Defendant Columbus Division of Police filed a Motion to Dismiss for Failure to State a Claim (Doc. 9). On June 10, 2015, then-Defendant Police Chief Kim Jacobs did the same (Doc. 11). The City of Columbus filed its Motion to Dismiss for Failure to State a Claim on June 11, 2015 (Doc. 12). A preliminary pretrial conference was held telephonically on July 15, 2015. (Doc. 16.) At that conference parties agreed that the Motions filed by the Columbus Division of Police and Police Chief Jacobs should be granted. The Magistrate Judge granted the motions and dismissed the claims against the Columbus Division of Police and Police Chief Jacobs on July 15, 2015. (*Id.* at 3.)

## II. STANDARD OF REVIEW

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by

factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and it must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III. ANALYSIS

#### A. State Law Claims

In response to the City's Motion to Dismiss, Plaintiffs provide no argument concerning their state law claims. Accordingly, they have abandoned such claims and "waived any arguments concerning dismissal." *Hess v. Huber Heights*, No. 3:13-CV-312, 2014 U.S. Dist. LEXIS 92370, at *17 ("[W]here, as here, plaintiff has not raised arguments in the District Court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived") (S.D. Ohio July 8, 2014) (quoting *Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (citing *Resnick v. Patton*, 258 F. App'x 789, 793, n.1 (6th Cir. 2007) (finding that arguments are waived in the absence of opposition to a motion to dismiss in the district court) (citations omitted))).

Defendant argues that it is immune from Plaintiffs' state law claims under Title 27, Chapter 2744 of the Ohio Revised Code, also known as the Political Subdivision Tort Liability Act. (Def.'s Mot. to Dismiss, Doc. 12 at 6.) The act requires a three-tiered analysis for determining municipal tort liability. First, it sets forth "the general rule that 'a political subdivision is not liable in damages in a civil action for injury . . . caused by any act or omission

5

of the political subdivision of an employee of the political subdivision in connection with a governmental or proprietary function.'" *Scott v. Columbus Dep't of Pub. Utils.*, 192 Ohio App.3d 465, 467 (Ct. App. Ohio 2011) (quoting R.C. 2744.02(A)(1)). Next, it carves out five exceptions to the general rule. *Id.* at 468. Finally, if one of those five exceptions apply, the political subdivision may assert one of the affirmative defenses in R.D. 27044.03 to reinstate immunity. *Id.*

Chapter 2744.01(C)(2)(a)&(i) of the Revised Code defines government function as "[t]he provision or nonprovision of police . . . services" and "[t]he enforcement or nonperformance of any law" respectively. The behavior Plaintiffs allege relates to the provision and performance of police services, so presumptive immunity seems to apply. *See Wentworth v. Coldwater*, No. 10-14-18, 2015 WL 1618923, at *6 (Ohio Apr. 13, 2015) ("[T]he provision or nonprovision of police protection and the enforcement or nonperformance of any law are specifically included in the definition of government functions) (quotation omitted). The Complaint alleges police misconduct in the course of law enforcement, so this tier seems satisfied and, given the lack of argument to the contrary, the Court thus deems it so.

The second tier of the analysis provides five exceptions to the general rule, none of which apply. The behavior alleged does not involve motor vehicle operation (2744.01(B)(1)); it does not concern a proprietary function (2744.01(B)(2)); it does not involve public roads (2744.01(B)(3)); it does not involve injuries on the grounds of a government building or building serving a government function (2744.01(B)(4)); and there is no other provision in the Ohio Revised Code expressly imposing municipal civil liability (2744.01(B)(5)). As such, the Court considers this tier satisfied, obviating the need for further analysis. As to state law claims against

6

Defendant, Plaintiffs have abandoned such claims, and Defendant's Motion to Dismiss is **GRANTED** and those claims are **DISMISSED with prejudice**.

### B. Federal Law Claims

To establish liability on claims asserted against a municipality under 42 U.S.C. § 1983, Plaintiffs "must adequately plead (1) that a violation of a federal right took place; (2) that the defendant acted under color of state law; and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)).

A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiffs contend that they have alleged facts sufficient to show that the City is responsible for constitutional violations that have injured Plaintiffs through the City's policies, customs, or practices and by the City's failure to train and supervise its employees adequately. (Compl., Doc. 2, ¶¶64-65, 67-70, 72-76, 78-80.) Plaintiffs allege that the City has "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices" that include permitting employees to conduct unreasonable and unlawful searches into private residences; to use unreasonable, deadly force while conducting routine investigations; to discharge their firearms without first using non-lethal methods of force; to conduct "woefully deficient" investigations into police misconduct; and to present perjured testimony without any

7

disciplinary action being taken. (*Id.* ¶68.) Plaintiffs further allege that the City has adopted policies, customs, or practices that provide "deferential and preferential treatment to officers involved in misconduct, including sequestration from investigation and sufficient time to collude with other officers and legal representatives," (*Id.* ¶74), and that the City pursues false charges against victims of police misconduct and "allows perjured testimony to go unchallenged where it serves to incriminate victims of police misconduct." (*Id.*) According to Plaintiffs, it does so in order to shield itself and its employees from criminal and civil liability. (*Id.* ¶75.)

Specifically, Plaintiffs allege that the responding officers' entry into their residence violated their Fourth Amendment right to be free from unreasonable search as guaranteed by the United States Constitution, and that the entry and subsequent use of force caused injury to Plaintiffs, including the permanent disfigurement of Mr. Thornton. (Doc. 2, ¶¶46-48, 53-54, 56-57, 59.) Plaintiffs further allege that the City refused to dismiss the criminal charges brought against Mr. Thornton in order to shield itself, the Columbus Division of Police, and the responding officers from liability. (*Id.* ¶38.) Plaintiffs also allege that the failure of the police to conduct a proper investigation into the events of April 20, 2013 facilitated the responding officers' ability to present perjured testimony at trial, which substantially impaired Mr. Thornton's ability to present a complete defense, in violation of his right to due process and a fair trial as guaranteed by the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. (*Id.* ¶64.)

Defendant argues that Plaintiffs have provided merely a bare recitation of the legal standards for municipal liability, and that this Court and the Sixth Circuit regularly grant dismissal under Rule 12(b)(6) motions "when allegations are as sparse and devoid of factual support as are the facts alleged in Plaintiffs' complaint here." (Def.'s Mot. to Dismiss, Doc. 12 at

8

5.) Defendant cites twelve cases in support of its argument, supplying no context for any of them. Such context would have been helpful because many of the cases Defendant cites do not support its argument.[1]

Contrary to what Defendant argues, Plaintiffs have made specific allegations concerning the City. Plaintiffs allege that the City of Columbus has adopted policies, customs, or practices that provide "deferential and preferential treatment to officers involved in misconduct, including sequestration from investigation and sufficient time to collude with other officers and legal representatives," (*Id.* ¶74), and that the City pursues false charges against victims of police misconduct and "allows perjured testimony to go unchallenged where it serves to incriminate

---

[1] *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013), for example, is an order on a motion for summary judgment whose discussion concerns the lack of factual evidence evinced and not the sufficiency of the pleadings. The court distinguished *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247-48 (6th Cir.1989), in which the plaintiffs offered "evidence of several separate instances where the prison failed to investigate similar claims of prisoner mistreatment." *Id.* at 478-79.
  In *Moses v. Prison Health Services*, Case No. 11-1507, 2011 U.S. App. LEXIS 26712 (6th Cir. Dec. 16, 2011), and unlike here, the complaint failed to allege that any injuries the plaintiff suffered resulted from defendant's execution of the alleged offending policy or custom. 2011 U.S. App. LEXIS 26712, at *6-7.
  *Howard v. City of Girard*, 346 F. App'x 49 (6th Cir. 2009) likewise does not quite fit because there, unlike here, the complaint failed to specify which right was implicated. 346 F. App'x at 52 ("The district court noted correctly that while plaintiff argues 'Girard was deliberately indifferent to Howard's "right to due process of law," he does not "identify which particular right Girard violated."'").
  *Farmer v. Scioto County Board of County Commissioners*, No. 1:14-CV-251, 2014 U.S. Dist. LEXIS 103104 (S.D. Ohio July 29, 2014) is not helpful because that concerned a medical care claim in which the complaint's factual allegations directly contradicted its legal argument. 2014 U.S. Dist. LEXIS 103104, at *11-12 ("It strains credibility for Plaintiff to claim" that the following steps, among others, do not amount to medical treatment: prescribing a course of antibiotics, providing topical antiseptic, and transporting plaintiff to a medical center for lancing and additional antibiotics).
  *Beamer v. Board of Crawford Township Trustees*, 2010 U.S. Dist. LEXIS 4440 (S.D. Ohio Jan. 20, 2010) is inapt because the complaint there contained "no allegations" that the defendants "took any action to deprive Plaintiffs of a constitutional right." 2010 U.S. Dist. LEXIS 4440, at *15.
  *Murray v. City of Columbus*, Case No. 2:10-CV-797, 2012 U.S. Dist. LEXIS 137888 (S.D. Ohio Sept. 26, 2012) is also inapt. There the plaintiff neither "explicitly identif[ied] a City custom or policy" nor "explain[ed] how execution of that policy . . . violated his constitutional rights." 2012 U.S. Dist. LEXIS 137888, at *13.
  In *Brown v. Cuyahoga County*, 517 F. App'x 426 (6th Cir. 2013), the plaintiff made only one factual allegation, namely "that other inmates urged him to be quiet because the correctional officers were known to have 'blanket parties,' a euphemistic term for the beating of prisoners." 517 F. App'x at 436. Plaintiffs here allege much more, discussed *infra*.

9

victims of police misconduct." (*Id.*) According to Plaintiffs, it does so in order to shield itself and its employees from criminal and civil liability. (*Id.* ¶75.) These are specific factual allegations, not the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" found wanting in *Carmichael*, 571 F. App'x at 433 (quoting *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)). Moreover, Plaintiffs have alleged that agents of the City have committed violations of specific rights guaranteed to Plaintiffs by the United States Constitution, namely its Fourth, Fifth, Sixth, and Fourteenth Amendments. (Doc. 2, ¶¶46-48, 53-54, 56-57, 59, 64.) Finally, Plaintiffs allege that these violations have harmed them in myriad ways, including financial loss, psychological distress and permanent disfigurement. (*Id.* ¶¶48, 51, 57, 59, 62, 70, 76, 80, 83.)

Nonetheless, Plaintiffs have not met their pleading burden.

1. *Inadequate Training and Custom of Tolerance*

As to claims of inadequate training, Plaintiffs fail to meet their burden due to lack of explanation. Plaintiffs allege that the City failed to train its employees adequately at ¶¶44, 67, 69, and 78 of their complaint. At no point do Plaintiffs allege in what way training was lacking. Because Plaintiffs failed to allege in what way training was lacking, the claims amount to mere legal conclusions, which the Court is not bound to accept in deciding this motion. *Snyder*, 990 F. Supp. 2d at 845 (citing *Iqbal*, 556 U.S. at 678–79).

Analogous cases support this conclusion. In *Pariscoff v. Columbus City Police Department*, No. 2:14-CV-00855, 2015 U.S. Dist. LEXIS 42049 (S.D. Ohio Mar. 31, 2015), the plaintiff alleged that the City of Columbus Police Department improperly trained officers who used force against him. 2015 U.S. Dist. LEXIS, at *2-3. The plaintiff in *Pariscoff* was involved in an altercation, after which two City of Columbus police officers were dispatched to the scene. *Id.*, at *1. When the officers arrived, the plaintiff alleged that one of the officers pushed the

plaintiff into a door and held him eight inches off the porch while manipulating the plaintiff's head forcefully back and forth. *Id.*, at *2. The court granted the defendant's motion to dismiss, noting that the plaintiff "fail[ed] to allege virtually any facts to establish that a custom or policy of the [police department] caused the deprivation of his federally protected rights," and that the plaintiff made "no specific allegations concerning the [police department's] training regime or policies. *Id.*, at *6.

In *Hess v. Huber Heights*, No. 3:13-CV-312, 2014 U.S. Dist. LEXIS 92370 (S.D. Ohio July 8, 2014), the plaintiff alleged that the City of Columbus "developed and maintained policies or customs which caused the deprivation of . . . Constitutional rights[,]" including a pattern and practice of misconduct including "the use of excessive force, illegal arrests and imprisonments, perjury, giving false statements, false testimony, falsification and other constitutional violations." 2014 U.S. Dist. LEXIS 92370, at *14 (internal quotations omitted). The court granted the defendant's motion to dismiss because the plaintiff's complaint failed "to sufficiently state failure to train or failure to supervise claims." *Id.*, at *18 (citing *Scrap Yard, LLC v. City of Cleveland*, 513 F. App'x 500, 505-06 (6th Cir. 2013) ("affirming dismissal where the complaint failed to 'specify in what way training was lacking, or how the failure to train may have resulted in damage to plaintiffs'")). Plaintiffs here similarly fail to specify in what way training was lacking. As such, Plaintiffs' inadequate training claims are **dismissed**.

Plaintiffs also fail to meet their burden due to their failure to plead causation as to all but one[2] of the remaining federal claims. To refresh, the final step of proving a successful § 1983 claim against a municipality is to prove "(3) that a municipality's policy or custom caused that violation to happen." *Bright*, 753 F.3d at 660 (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). The United States Supreme Court spelled out the rules of causation concerning

---

[2] The remaining claim, malicious prosecution, is discussed in pt. 2.

11

municipalities in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, "[a] municipality or other local government may be liable . . . if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 692).

Here, the bulk of Plaintiffs' allegations against the City fail to allege a causal link between the City's customs and the § 1983 violations Plaintiffs allege. *See* Compl., ¶68, the City has "adopted and implemented . . . policies, customs, or practices that include" permitting employees to commit various violations; *id.* ¶73, the City has "adopted and implemented policies, customs, or practices that permit constitutional deprivations to United States Citizens"; *id.* ¶74a, the City has "adopted and implemented policies, customs, or practices that facilitate constitutional deprivations to United States citizens," including giving police officers involved in misconduct "deferential and preferential treatment," and "sufficient time to collude with other officers and legal representatives"; *id.* ¶74f, the City "allows perjured testimony to go unchallenged where it serves to incriminate victims of police misconduct; *id.* ¶79, the City has "adopted and implemented . . . policies, customs, or practices, which allow employees to present perjured testimony in criminal cases."

The allegations as they stand do not plead a causal link between the customs and policies of the City and the violations Plaintiffs allege, merely that the customs and policies allowed for actors to violate Plaintiffs' constitutional rights. As such, Plaintiffs have not met their pleading burden. *See, e.g., Miller v. Meyer*, No. 2:14-CV-101, 2014 U.S. Dist. LEXIS 150871, at *16-17 (S.D. Ohio Oct. 23, 2014) (in a malicious prosecution case, "[a]lthough [the prosecutor's office's] policy may have given Defendant . . . the opportunity to violate Plaintiffs' Fourth Amendment

rights, the policy itself did not cause the violation," and finding otherwise "would effectively impose vicarious liability on Brown County for Defendant's . . . alleged conduct, which *Monell* prohibits."). Plaintiffs' claims as to the foregoing alleged violations are thus **dismissed**.

## 2. *Malicious Prosecution*

There is one allegation remaining, namely that the City of Columbus "pursues false charges against victims of police misconduct." (Compl. ¶74e.) Plaintiffs allege that the City improperly pursued false charges against Mr. Thornton in violation of the Fifth and Fourteenth Amendments of the United States Constitution in an effort to shield itself and its employees from civil liability. (*Id.* ¶38.) Plaintiff claims the City's actions injured him financially and emotionally. (*Id.* at 12, ¶¶61-62.)

All citizens have the right to be free from "wrongful investigation and prosecution." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003)). And the Sixth Circuit "recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes*, 449 F.3d at 715, and *Thacker*, 328 F.3d at 259). According to the Sixth Circuit:

> To state a valid federal civil rights claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must allege facts meeting four elements: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor."

*Johnson v. Moseley*, 790 F.3d 649, 654 (2015) (citing *Robertson v. Lucas*, 753 F.3d 606, 616

(6th Cir. 2014)). As to the second part of the first prong, Plaintiffs need not ultimately prove that Defendant made the decision to prosecute, rather that it influenced or participated in the decision to do so. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

As to the second prong, the proper consideration in the context of a malicious prosecution claim is whether Defendant had probable cause to prosecute. *See, e.g., DeSoto* (noting that a claim for malicious prosecution fails "when there was probable cause to prosecute").

As to the third prong, "the plaintiff must show that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Sykes*, 625 F.3d at 308-09 (quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 748–50 (6th Cir. 2006))). That deprivation need not be imprisonment, and the law deems a person "continued to be seized for Fourth Amendment purposes when their freedom of action [is] restrained due to the pending criminal proceedings (e.g., restrictions on travel, and requirements to appear)." *Gregory*, 444 F.3d at 748 (citing *Albright v. Oliver*, 510 U.S. 266, 278 (1994) (Ginsburg, J. concurring)).

As to the final prong, Plaintiffs must prove that the case was resolved in Mr. Thornton's favor. The Complaint mentions that the jury hung 7-1 in favor of acquittal on the others, and that those charges were eventually dropped. (*Id.* ¶42.) The Court has not found Sixth Circuit law proposing that a hung jury or dropped charges constitute the proceeding being resolved in the plaintiff's favor. The Second Circuit suggests they do not. *See Singleton v. City of New York*, 632 F.2d 185, 193 (1980) ("Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." (quoting Restatement (Second) of Torts § 660, Comments a & b (1977))).

It is improper for Plaintiffs to seek protection from malicious prosecution under the Fifth and Fourteenth Amendments of the United States Constitution as a violation of Mr. Thornton's right to due process. (Compl. at 12.) First, the Court has not found any law supporting Fifth Amendment protection against malicious prosecution. (Compl. at 12.) Second, malicious prosecution is not a viable claim as a violation of general due process. This is because "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). As discussed above, the Fourth Amendment is the proper safeguard against malicious prosecution, and it is under that Amendment that Plaintiffs must seek refuge.

For the foregoing reasons, Plaintiffs' claim of malicious prosecution is **dismissed**, and Defendant's Motion to Dismiss under Rule 12(b)(6) is **GRANTED** in its entirety.

### C. Leave to Amend

Courts have discretion to determine whether to dismiss a complaint or to grant plaintiff the opportunity to amend. *See United States ex rel. Bledsoe v. Cmty. Helath Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). In cases "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id.* (citing *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993)).

Accordingly, the Court **GRANTS** Plaintiffs leave to file an amended complaint asserting federal law claims consistent with the foregoing Opinion and Order within **FOURTEEN DAYS**

from entry of this Order on the Court's docket. If no amended complaint is filed within fourteen days, the Court will deem Plaintiffs' entire Complaint dismissed with prejudice.

## CONCLUSION

The Court **GRANTS** Defendant's Motion to Dismiss. (Doc. 12), and *sua sponte* **GRANTS** Plaintiffs leave to amend their complaint consistent with the foregoing.

**IT IS SO ORDERED.**

                                                     s/Algenon L. Marbley
                                             **ALGENON L. MARBLEY**
                                             **UNITED STATES DISTRICT COURT**

**Dated: March 17, 2016**